READE v. HAAK.

1. BROKERS—RIGHT TO COMMISSIONS—PROCURING CAUSE OF SALE.
  Where a broker's contract binds him, as a condition of his right
  to demand commissions, to bring the buyer and seller to an
  agreement, it is not necessary that the broker shall conclude
  the sale in person, it being sufficient if his efforts are the pro-
  curing cause of the sale.[1]

2. SAME—EVIDENCE—SUFFICIENCY.
  In an action by a broker for commissions on the sale of real es-
  tate, evidence examined, and *held*, sufficient to go to the jury
  as to the terms of the agreement and what was done under it.

Error to Calhoun; Hopkins, J. Submitted October
17, 1906. (Docket No. 96.) Decided January 4, 1907.

Assumpsit by J. Lyman Reade, George R. Cowles, and
Charles W. Robinson, copartners as J. L. Reade & Com-
pany, against Harry K. Haak for commissions on the
sale of certain real and personal property. There was
judgment for plaintiffs, and defendant brings error. Af-
firmed.

*W. S. Powers*, for appellant.

*Williams & Beck*, for appellees.

BLAIR, J. Plaintiffs brought this action to recover a
commission fee alleged to be due them as brokers upon
the sale of certain real estate and personal property com-
prising the lumberyard and contents of defendant. The
declaration alleges that:

" The plaintiffs and the defendant entered into an agree-
ment by which the said defendant placed the property
hereinafter described in the hands of said plaintiffs for

[1] As to when real-estate broker is considered the procuring cause
of a sale or exchange of property, see note to *Hoadley* v. *Savings
Bank* (Conn.), 44 L. R. A. 321.

sale at a price to be satisfactory to said defendant, the said plaintiffs to act as commission men and brokers for the sale thereof, and the said defendant to pay the said plaintiffs a commission of two (2) per cent. upon the sale price thereof upon the consummation of such sale."

The declaration further avers that plaintiffs did procure a purchaser, at a price satisfactory to defendant, to whom the property was sold, and "that the said purchaser was so found as aforesaid by the efforts of said plaintiffs, and the said sale was made by the plaintiffs."

Defendant gave notice, under the plea of the general issue, among other things:

"That it was expressly understood and agreed that, in order to entitle the said J. Lyman Reade to any commission whatever, he was to find a buyer ready and willing to take said real estate at $14,000, and said personal property at invoice price, and in case said J. Lyman Reade found a buyer ready and willing to take all of said property at said price, this defendant was to pay him 2 per cent. commission therefor."

Plaintiff Reade gave testimony that:

"My commission was understood at that time to be 2 per cent. straight through. They asked me what my rate of commission was, and I said it would be 2 per cent. straight through on the valuation of their property—that is, whatever their property sold for. *   *   *
"At the time the property was left with me, there was nothing said by the defendant about how long a time I was to have to make the sale. He was exceedingly anxious to have the property sold as soon as possible."

Defendant stated that his price for the real estate would be $14,000, which he finally reduced to $13,500. After negotiations extending over five or six weeks, the highest offer plaintiff was able to get was $12,000, which defendant refused to accept. April 21, 1905, plaintiff wrote a letter to defendant's father, who was present when the parties made their agreement, of which the following are extracts:

"Harry and I had a conference this morning, and have

come to the conclusion that we will be unable to get Messrs. North & Strong in line. We thought possibly if you were here, that you might have some bearing upon Mr. North. He seems to think that he could do some better in price if you were here and he has positively stated that he will not pay more than $12,000 for the real estate. * * * ·I said to Harry this morning that I would try and get my commission above that and thought possibly I could do it, but without something further from you, we have nothing to work from. Harry suggested that I lay this matter before you just as I see it. * * * We thought possibly that you might be able to assist us in closing this matter and as you have written that you would be here this week, I would suggest that you come as early as possible, as I fear the longer we let it go the farther Mr. North gets away from us. Within the last two days we have exhausted all the resource we had to bear upon Mr. North to purchase this property and feel that it is important to close this matter up at once, if we do it at all. It seems as though we should be able to close · it up with a small concession for each side. It is our aim to secure the very best value we possibly can for our clients, but in this case, there does not seem to be any way out of it, to get more from the purchaser; he has simply ' backed up.' Please advise about when you think you will be here. I am very anxious to close this matter if possible and am satisfied were you here we could close, and close at once."

This letter was introduced in evidence by defendant. Soon after writing the letter, plaintiff Reade secured from North & Strong an offer of $12,500, which was also refused by defendant. On April 26th, plaintiff had an interview with defendant and his father at defendant's office.

" We stood up around the table and I asked Mr. Haak what he thought of the proposition as it now stood. Well, he did not like the proposition. He says: ' We can sell this property for $12,750, but we won't allow you any commission for selling it.'

" Q. Sell it to whom, did he say ?

"A. North & Strong, but he would not allow me any commission on it, and he would allow me commission on the stock, and he was excited. * * *

" The younger Mr. Haak got to talking with me about my commission—that I should reduce my commission on the real estate because they had not got their price on it. I told him I did not see any good reason for it, but I says: ' I will take care of that part of it if you sell this property to North & Strong, my client.' And the old gentleman Haak says: ' You are getting a big commission now.' I could see from his face that he was mad. The younger Mr. Haak at that point said to me, ' Well,' he says, 'we may as well go out,' and he steps out and I goes right out in the street and went over to North & Strong's office and stayed there with him for probably half an hour, and while I was in there talking the matter over with him, he told me just how the matter stood. Defendant came into North & Strong's office while I was there and made this remark: ' That the deal was all off,' meaning the sale of that property was all off, and I went away then and had no other conversation. The next day, about 9 o'clock, Harry Haak served a paper on me [Exhibit 1 was read in evidence, as follows]:

" ' To J. LYMAN READE:

" ' You are hereby notified that we withdraw from your hands the real estate and personal property known as the ' Haak Lumber-yard' in the city of Battle Creek, Mich., and that you are no longer our agents for the sale of either the personal property or real estate, you having failed to find a purchaser for said property at the price we placed the same in your hands for.

" ' Dated April 26, 1905.

" ' HARRY K. HAAK.
" ' JACOB A. HAAK.'

" Q. Your connection with this matter ceased, then, upon receipt of this paper?

" A. Yes, sir; he served this paper upon me about 9 o'clock in the morning, the 27th. At the time Mr. Haak handed the paper to me, he says, ' I am very sorry,' he says, ' very sorry that I can't allow you commission upon that property down there, for what you have done, but,' he says, ' this is for father, and father won't allow you a commission.' "

Defendant put in testimony tending to sustain his plea of a special agreement to sell the property for $14,000, afterwards reduced to $13,500, of the failure of the plaintiffs to perform their part of the agreement, the termi-

nation of the agreement by defendant, and the sale by him on his own account to North & Strong. At the close of plaintiffs' proofs, and again at the close of the case, defendant moved for the direction of a verdict in his favor. Defendant's motions were overruled, and the court submitted the case to the jury, who found a verdict for plaintiffs. After verdict, defendant moved for a new trial, which motion was denied, the reasons therefor filed and exceptions taken. Defendant brings the record to this court for review on writ of error, assigning as errors rulings of the court upon the admissibility of testimony, the refusal to direct a verdict; refusal of requests to charge, errors in the charge as given, and the denial of the motion for a new trial.

We do not think there is any merit in the assignments of error relating to the court's rulings in admitting or excluding testimony. If it could be said that any of the rulings was erroneous, the error was not of such a character as to be prejudicial to defendant's case. The important question presented by the record is whether the court should have directed a verdict for defendant.

Defendant contends "that the testimony shows conclusively that the plaintiffs never found a buyer for the property in question *at a price satisfactory to said defendant* as alleged in plaintiffs' declaration, and that the sale was not *made by the plaintiffs.*" It is true that plaintiffs did not themselves obtain an offer from North & Strong which was accepted by defendant, but this fact is not conclusive of their right to their commission. The agreement, as stated by the plaintiffs in their declaration, and as testified to by Mr. Reade, bound the plaintiffs, as a condition of their right to demand commissions, to bring the buyer and seller to an agreement. It was not necessary, however, that the plaintiffs should conclude the sale in person; it was sufficient if their efforts were the procuring cause of the sale. According to the testimony of plaintiff Reade, he had procured an offer of $12,500 from North & Strong, which he had communi-

cated to the defendant. The statement of defendant at the office on April 26th that he could sell the property to North & Strong for $12,750 would warrant the jury in finding that defendant had obtained such an offer from North & Strong before the alleged cancellation of the contract, and there was evidence to warrant them in finding that the plaintiffs' efforts were the procuring cause of the offer at which they closed the transaction on the next day. There was a sharp conflict of testimony as to the original agreement and what was done under it, which presented questions of fact for the jury. If they accepted the plaintiffs' testimony as true, they were not only authorized, but it was their duty, to find a verdict in their favor. *Heaton* v. *Edwards,* 90 Mich. 500; *Decker* v. *Widdicomb,* 137 Mich. 331.

There were some inconsistencies in the charge and perhaps some erroneous instructions, but they were not prejudicial to the defendant. In fact, the charge was much more favorable to the defendant than he was entitled to.

What we have already said disposes of the assignment of error upon the overruling of the motion for a new trial.

The judgment is affirmed.

McALVAY, C. J., and CARPENTER, GRANT, and MOORE, JJ., concurred.