MACMILLAN v. C. & G. COOPER CO.

1. BROKERS—PROCURING CAUSE.

In an action for broker's commissions on sale of engines under a contract fixing the compensation plaintiff should receive, the finding of the trial court that he was the procuring cause of the sale made, *held*, justified by the proofs.

2. SAME—NOT NECESSARY FOR BROKER TO CONCLUDE SALE IN PERSON—ALTERATIONS IN ARTICLE SOLD.

It was not necessary, to support recovery by plaintiff, that he should conclude the sale in person, nor does the fact that the maker's representatives consented to make some slight change in the type and equipment of the engine, unknown to plaintiff, deprive him of his right to recover.

.3. Same—Implied Promise to Pay.

Where plaintiff, having contract with defendant for commissions to be paid him on sale of engines to certain customers, at request of defendant's representatives made trips with them in his automobile to interview other prospective purchasers, the court was warranted in holding that there was an implied promise to pay and in allowing reasonable compensation therefor.

Error to Muskegon; Vanderwerp (John), J. Submitted January 14, 1930. (Docket No. 91, Calendar No. 34,751.) Decided March 6, 1930.

Assumpsit by Edwin J. MacMillan against the C. & G. Cooper Company for commissions for selling machinery. From a judgment for plaintiff, defendant brings error. Affirmed.

*Emil B. Gansser,* for plaintiff.

*Cross, Foote & Sessions* (*Henry C. Devin,* of counsel), for defendant.

Sharpe, J. This case was tried by the court without a jury. Findings of fact and conclusions of law were filed. But for their length, which was induced by amendments proposed, we would adopt them as our own. From them it appears:

In 1928, the plaintiff, a resident of Grand Rapids, was the representative of several manufacturers of factory engines and machinery as a. salesman in Michigan on a commission basis. One of the firms so represented by him was Hooven, Owen, Rentschler Company, of Hamilton, Ohio.

Plaintiff received an inquiry from the Campbell, Wyant & Cannon Company, of Muskegon, for a Diesel engine, and wrote the Hooven company relative to it, and was advised by letter that they could

not furnish it but had referred his letter to. the defendant company, manufacturers of such engines, at Mt. Vernon, Ohio. This company wrote plaintiff on July 20, 1928, giving him a full description of the engine manufactured by them and the price of it, stating therein:

"In the price we have made, we have added 5 per cent. to our standard price which we will be willing to allow you for resale."

On July 26th plaintiff wired defendant to send a description of their engine to the Campbell company at Muskegon. This the defendant did, saying they were sending it at the request of plaintiff, but stated no price therefor. Soon after, plaintiff wrote defendant:

"I expect this job will come up soon after the 5th of August. The C., W. & C. Corp. will advise me and I will wire you if I think a man from your office will help put this job over."

Defendant replied to this:

"If you need any one from here to help you out, let us know and we will have some one there as soon as possible."

On August 20th, plaintiff wired defendant to "substitute gas for oil engine. * * * Wire price with and without air compressor." Defendant replied by wire, giving the information asked, and saying, "All f. o. b. Mt. Vernon including your five per cent. protection." This information, except that relating to plaintiff's compensation, was communicated by plaintiff to the Muskegon company by letter. This was followed by a conversation between plaintiff and defendant by telephone, followed by a lengthy letter to plaintiff more particularly describing the gas engine. This letter concluded:

"The above prices all include 5 per cent. commission to you and as we are greatly interested in this inquiry and since it so closely fits our standard engines and compressors, we will be glad to have one of our engineers call upon you and assist in making the sale just as soon as you think the job is active.

"Please let us know if there is anything more we can do in the matter at this time."

At plaintiff's request, Mr. Shubring, representing defendant, came to Grand Rapids, and he and plaintiff went to Muskegon and had a conference with the engineer of the company. Later, another representative of defendant accompanied plaintiff to Muskegon.

The Muskegon company gave a written order for two Diesel engines on November 23, 1928, to two representatives of the defendant, who were sent to that city by defendant for the purpose of securing it. The plaintiff had no knowledge of the sale until several days later.

Charles T. Hildebrandt, the plant engineer of the Muskegon company, testified that plaintiff visited their plant at least once every other week while the deal was pending, urging the purchase of an engine from the defendant, and that he several times suggested to defendant's representatives

—"if there was any commission or any credit for the sale of that engine, provided we bought the engine, I thought that Mr. MacMillan should have it because he had been working on this deal for several years," and that "they made no comment on it at all."

Defendant's claim is thus stated:

"He (plaintiff) failed to make any sale of this specific machinery whereupon his contract relations with defendant were at an end."

Defendant also relies on the fact that plaintiff, during the pendency of the negotiations, was desirous of securing an agency connection to handle defendant's engines in the western territory of Michigan, and on defendant's reply by letter thereto, in which it said: "We could only recognize you in proportion to the amount of service rendered and this must necessarily be left in our hands to determine," and draws the inference therefrom that the deal with the Muskegon company "was not excluded from the terms and conditions of this letter."

There is nothing in the correspondence relating to plaintiff's request for an agency to indicate that the deal then pending with the Muskegon company was considered by either party. As to this, plaintiff had a contract fixing the compensation he should receive. The proofs justified the finding of the court that he was the procuring cause of the sale made, and, if so, he was entitled to the percentage of the selling price agreed upon. *Case* v. *Rudolph Wurlitzer Co.*, 186 Mich. 81. It was not necessary, to support his recovery, that he should conclude the sale in person. *Reade* v. *Haak*, 147 Mich. 42. His authority had not been revoked, but, even if it had, the defendant could not thereby avoid payment. *Heaton* v. *Edwards*, 90 Mich. 500; *McGovern* v. *Bennett*, 146 Mich. 558. Neither does the fact that defendant's representatives consented to make some slight change in the type and equipment of the engine, unknown to plaintiff, deprive him of his right to recover. *McKinnon* v. *Gates*, 102 Mich. 618.

The court also allowed plaintiff $15 per day, and $10 per day for the use of his automobile, for three trips made by him from Grand Rapids to Muskegon at the request of and with representatives of the defendant to interview other prospective purchasers

in that city.   No claim is made that the allowance is unreasonable, but defendant claims the service was rendered voluntarily and without promise or expectation of remuneration therefor.   It was rendered on request, and, while we find no express promise to pay therefor, we think the court was warranted in implying a promise and in allowing the claim.

The judgment is affirmed.

Wiest, C. J., and Butzel, Clark, Potter, North, and Fead, JJ., concurred.   McDonald, J., did not sit.