KBD & ASSOCIATES, INC v GREAT LAKES FOAM
TECHNOLOGIES, INC

Docket No. 303044. Submitted March 6, 2012, at Lansing. Decided March
15, 2012, at 9:00 a.m.

KBD & Associates, Inc. filed an action in the Jackson Circuit Court
against Great Lakes Foam Technologies, Inc., claiming that Great
Lakes Foam had breached the parties' commission contract when
it failed to pay KBD's owner, Roger Lyons, a commission for sales
that occurred after Great Lakes Foam terminated its business
relationship with Lyons. Lyons approached Great Lakes Foam in
2005 to determine whether it was interested in manufacturing
foam seat cushions for Isringhausen, Inc. Great Lakes Foam
agreed, and Lyons was paid a 5 percent commission on all sales to
Isringhausen. Great Lakes Foam was contacted by Isringhausen in
April 2009 and informed that Lyons was banned from their facility
and that it would no longer deal with Lyons as a sales represen-
tative. Great Lakes Foam thereafter informed Lyons that it was
terminating their business relationship. Although Great Lakes
Foam continued to sell foam parts to Isringhausen through March
2010, it did not pay any commissions to Lyons for the sales
occurring after his termination. Lyons argued that he was entitled
to posttermination sales commissions on the basis that he was the
procuring cause of Great Lakes Foam's sales to Isringhausen. The
parties filed cross-motions for summary disposition. The court,
Chad C. Schmucker, J., originally denied Lyons's motion and
granted summary disposition in favor of Great Lakes Foam, but
then granted KBD's motion for reconsideration. The court deter-
mined that there was a question of fact about whether the
Isringhausen business would have continued without future ac-
count servicing from a representative once Lyons was terminated.
Following a bench trial, the court entered judgment in favor of
Great Lakes Foam, finding that Lyons was not entitled to the
commissions because the agreement required him to perform
significant account servicing and he committed the first material
breach of the commission contract when he was banned from
Isringhausen's premises. KBD appealed.

The Court of Appeals *held*:

1. Sales agents are entitled to posttermination commissions for sales they procured during their time with a former employer, regardless of whether they concluded and completed the sale. The procuring-cause doctrine applies when the parties have a contract governing the payment of sales commissions but the contract is silent regarding the payment of posttermination commissions. The basic principle behind the procuring-cause doctrine is the notion of fair dealing. Thus, if the principal cancels the authority of the agent, the agent would still be able to recover the commission if the agent was the procuring cause. In this case, the customer (Isringhausen) canceled Lyons's authority, not Great Lakes Foam. Lyons's services were terminated as an attempt by Great Lakes Foam to retain Isringhausen as its client, not an attempt to avoid payment of Lyons's commission. Accordingly, the rationale underpinning the procuring-cause doctrine was not applicable to the facts of this case.

2. A court must look to the parties' contract when analyzing a claim for posttermination commissions. When the terms of a contract are contested, the finder of fact determines its actual terms. However, a sales agent who commits the first substantial breach of a commission contract is not entitled to recover posttermination commissions. If account servicing was a term of the contract, then Lyons's ban from Isringhausen's plant constituted a breach of the parties' contract because Lyons would not have been able to perform his servicing obligations. The circuit court properly determined that summary disposition was inappropriate because there was a question of fact regarding the terms of the parties' commission contract, specifically whether, and if so to what extent, the contract required Lyons to service the account.

3. The decision to admit evidence is within the court's discretion and will not be disturbed on appeal absent an abuse of that discretion. A court's decision whether to impose discovery sanctions is also reviewed for an abuse of discretion. Plaintiff failed to move to compel the production of posttermination e-mails between Isringhausen and Great Lakes Foam. Therefore, an order to compel production was never entered pursuant to MCR 2.313(A), and sanctions for failure to produce the e-mails could not be imposed under MCR 2.313(B)(2). Contrary to KBD's argument, deposition testimony regarding the e-mails provided notice of their existence. Even if it was error to admit the posttermination e-mails, it was harmless because the circuit court's ultimate decision on whether account servicing was part of the commission contract was based primarily on Lyons's own testimony.

4. The law of the case doctrine provides that a ruling by an appellate court on a particular case binds the appellate court and all lower tribunals with respect to that issue. However, a trial court has unrestricted discretion to review its previous decisions, and the law of the case doctrine does not preclude a trial court from reversing its prior decision. Because there had been no ruling by an appellate court in this case, the circuit court had authority to grant KBD's motion for reconsideration and reverse its prior decision granting summary disposition in favor of Great Lakes Foam.

5. The circuit court's judgment did not contravene its order granting KBD's motion for reconsideration. In its initial order granting summary disposition in favor of Great Lakes Foam, the circuit court determined that Lyons's account-servicing obligations were significant enough to render the procuring-causes doctrine inapplicable because Lyons committed the first material breach when he was banned from Isringhausen's plant. However, when the court granted KBD's motion for reconsideration, it never determined that the procuring-cause doctrine was applicable; rather, the circuit court determined that there was an issue of fact regarding Lyons's service obligation, thus making summary disposition inappropriate.

6. The circuit court's findings on the issue of Lyons's account-servicing obligations under the terms of the commission contract were not against the great weight of the evidence.

Affirmed.

1. AGENCY — PRINCIPAL AND AGENT — SALES COMMISSIONS — PROCURING-CAUSE DOCTRINE.

Sales agents are entitled to posttermination commissions for sales they procured during their time with a former employer, regardless of whether they concluded and completed the sale; the procuring-cause doctrine applies when the parties have a contract governing the payment of sales commissions but the contract is silent regarding the payment of posttermination commissions; the basic principle behind the procuring-cause doctrine is the notion of fair dealing; if the principal cancels the authority of the agent, the agent is still able to recover the commission if the agent was the procuring cause.

2. AGENCY — PRINCIPAL AND AGENT — POSTTERMINATION SALES COMMISSIONS — BREACH OF COMMISSION CONTRACT.

A court must look to the parties' contract when analyzing a claim for posttermination commissions; when the terms of a contract are

contested, the finder of fact determines its actual terms; a sales agent who commits the first substantial breach of a commission contract is not entitled to recover posttermination commissions; a substantial breach occurs when the sales representative is unable to fulfill its account-servicing obligations under the contract because the customer banned the sales representative from its premises or otherwise refused to deal with the principal's agent.

3. COURTS — SUBSEQUENT REVERSALS — LAW OF THE CASE DOCTRINE.

The law of the case doctrine provides that a ruling by an appellate court on a particular case binds the appellate court and all lower tribunals with respect to that issue; the doctrine does not prevent a trial court from exercising its unrestricted discretion to review its prior decision to correct an error.

*Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, P.C.* (by *Phillip L. Sternberg*), for KBD & Associates, Inc.

*Warner Norcross & Judd, LLP* (by *James Moskal*), for Great Lakes Foam Technologies, Inc.

Before: RONAYNE KRAUSE, P.J., and DONOFRIO and FORT HOOD, JJ.

DONOFRIO, J. Plaintiff appeals as of right the circuit court's judgment in favor of defendant following a bench trial. Because the court properly denied plaintiff's motion for summary disposition, it did not err by admitting evidence of posttermination communications at trial, its judgment did not contravene the great weight of the evidence, and it did not misinterpret the procuring-cause doctrine, we affirm.

Plaintiff is a manufacturer's representative firm owned and operated by Roger Lyons. Its sole function is to serve as a sales representative to various companies. Defendant manufactures and supplies foam and foam-padded products. In approximately 1997 Lyons approached defendant's primary owner, William MacCready, regarding the possibility of defendant manufacturing a foam armrest to

sell to a company named Findlay Industries. MacCready agreed to manufacture the armrests and paid Lyons a five percent commission on armrest sales. According to Mac-Cready, the commission was based on Lyons managing the account because MacCready had no personnel to perform that function. The agreement was not reduced to writing and lasted for one or two years until Findlay Industries went out of business.

In 2005, Lyons again approached MacCready and inquired whether MacCready was interested in manufacturing foam seat cushions for Isringhausen, Inc. MacCready agreed to the deal and paid Lyons a five percent commission on all sales to Isringhausen. Again, the agreement was not reduced to writing, but Lyons and MacCready both claimed that the deal was intended to be a continuation of the armrest agreement.

Defendant produced between 25 and 30 different parts for Isringhausen (the 2005 project). According to Lyons, once production on the 2005 project began, his servicing obligations were minimal, and he spent most of his time attempting to obtain new business for defendant from Isringhausen and other companies. MacCready maintained, however, that Lyons's commission was contingent on his performance of account manager functions and that Lyons's account-servicing responsibilities were significant.

On April 3, 2009, Tim Packer, defendant's coowner and general manager, received an e-mail from an Isringhausen employee informing him that Isringhausen would no longer allow Lyons to represent defendant. The e-mail stated that Isringhausen no longer wished to deal with Lyons "in the future effective immediately" and indicated that all future correspondence would be between Isringhausen's and defendant's personnel di-

rectly. The e-mail further stated that Lyons was not to contact Isringhausen for any reason whatsoever and that if defendant found this unacceptable, Isringhausen would make arrangements to locate a different foam supplier. Consequently, Packer and MacCready informed Lyons that they were terminating their relationship with him. Although defendant eventually lost the Isringhausen account, it continued to sell parts to Isringhausen through March 2010, generating approximately $1.4 million in sales between the time that Lyons was terminated and the time that the sales were discontinued. Defendant did not pay any sales commissions to Lyons after his termination.

Thereafter, plaintiff filed suit against defendant for breach of the parties' commission contract. Plaintiff alleged that it had fulfilled its obligations under the contract and that Lyons was responsible for procuring all of defendant's sales to Isringhausen. Plaintiff further alleged that Lyons was entitled to a five percent commission on all of defendant's sales to Isringhausen that occurred after Lyons's termination.

The parties filed cross-motions for summary disposition pursuant to MCR 2.116(C)(10). Lyons argued that he was entitled to posttermination sales commissions because he was the procuring cause of defendant's sales to Isringhausen. Defendant, on the other hand, argued that the procuring-cause doctrine was inapplicable because Lyons was responsible for a significant amount of account servicing, which he was unable to perform after Isringhausen banned him from its premises. Defendant also argued that the doctrine was inapplicable because Lyons committed a material breach of contract when he was banned from Isringhausen's premises.

Initially, the trial court denied Lyons's motion and granted summary disposition in favor of defendant. The

court determined that Lyons's servicing responsibilities were significant enough to render the procuring-cause doctrine inapplicable. The trial court also determined that the doctrine was inapplicable because Lyons committed the first material breach of contract by getting himself banned from Isringhausen's premises. Thereafter, Lyons moved for reconsideration, which the trial court granted. The trial court reasoned that, viewing the facts in the light most favorable to plaintiff, there was a question of fact regarding whether the posttermination orders "would have come in anyway," despite that Lyons was no longer servicing the account. The trial court further stated that even though it determined that Lyons had committed the first breach, "the first breach only becomes significant if there were customer service requirements."

The case proceeded to a two-day bench trial, following which the trial court entered a judgment in defendant's favor. The court concluded that the commission agreement required Lyons to perform significant account servicing, which, although not a full-time job, was significant enough that defendant had to replace Lyons. The trial court further concluded that because of Lyons's significant service obligations, he committed the first material breach when he was banned from Isringhausen's premises.

Plaintiff first argues that the trial court erroneously denied its motion for summary disposition because defendant failed to produce evidence of significant account servicing that defendant was required to perform after Lyons's termination. We review de novo a trial court's decision on a motion for summary disposition. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). Under MCR 2.116(C)(10), summary disposition may be granted when "there is no genuine

issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When deciding a motion under (C)(10), the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence in the light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004).

"The law in Michigan is that sales agents are entitled to post-termination commissions for sales they procured during their time at the former employer." *Stubl v T A Sys, Inc*, 984 F Supp 1075, 1095 (ED Mich, 1997). In *Reed v Kurdziel*, 352 Mich 287, 294-295; 89 NW2d 479 (1958), the seminal case in Michigan discussing the procuring-cause doctrine, our Supreme Court stated:

> It would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agent's or broker's services without compensation and imposing upon the principal, regardless of the type of agency or contract, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales made have been consummated by the principal himself or some other agent. In Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. In Michigan the rule goes further to provide if the authority of the agent has been cancelled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause. [Citations omitted.]

The procuring-cause doctrine applies when the parties have a contract governing the payment of sales commissions, but the contract is silent regarding the payment of posttermination commissions. See *id.*

Plaintiff argues that Lyons was entitled to posttermination commissions because the uncontested evidence showed that he was the procuring cause of defendant's sales to Isringhausen. Plaintiff contends that at the time of Lyons's termination there was no work left to be performed with respect to the 2005 project other than minor ministerial tasks. Plaintiff further contends that the trial court erroneously relied on *Roberts Assoc, Inc v Blazer Int'l Corp*, 741 F Supp 650, 655 (ED Mich, 1990), a nonbinding, federal decision in which that court stated:

> If subsequent purchase orders are submitted by a customer which involve no additional servicing or negotiation, then the salesman securing the original account may well be entitled to commissions on those sales. Of course, in the usual case each subsequent order will require some further customer services and under those circumstances the agent securing the previous order will have no claim for additional commissions. It is a question of fact for the jury whether subsequent purchases were effectuated by additional customer services or were made solely on the force of the original representations.

Plaintiff asserts that *Roberts* does not accurately describe the procuring-cause doctrine because the mere fact that *some* further customer servicing is required does not justify termination of commissions. Plaintiff appears to argue that when additional posttermination servicing is required, the court must balance the agent's pretermination efforts against the principal's posttermination efforts to determine if the agent is still the procuring cause of the sale. Applying this balancing test, plaintiff asserts that he was entitled to summary disposition because defendant failed to produce evidence that it provided significant posttermination account servicing.

The basic principle behind the procuring-cause doctrine is the notion of fair dealing. *Reed*, 352 Mich at 294. It is unfair to allow a principal to terminate an agent and avoid paying commissions on sales that the agent procured. Thus, "if the authority of the agent has been cancelled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause." *Id.* at 295. Here, Lyons's authority was not canceled by the principal. Rather, Isringhausen, the customer, canceled Lyons's authority. Moreover, defendant's termination of Lyons was an attempt to retain its customer and not an attempt to avoid paying Lyons's commission. Under these circumstances, the principles underpinning the procuring-cause doctrine are simply inapplicable.

In addition, summary disposition was inappropriate because the parties disputed the terms of the commissions contract. When analyzing a claim for posttermination commissions, the first step is to look at the parties' contract. *Reed*, 352 Mich at 294. Contrary to plaintiff's argument, defendant presented evidence of the servicing efforts it provided to Isringhausen after Lyons's termination. Both MacCready and Packer testified during their depositions that Lyons was hired to be a full-service account manager and that Lyons's commission was contingent on his management of the account. Packer explained that "[m]anaging an account could entail many things, working with an engineering department, working with the quality department, working with the purchasing department, having the pulse of your customer, making sure the customer is happy." In contrast, Lyons testified that his commission was not contingent on servicing the account. Lyons acknowledged that he considered certain account-servicing tasks to be his responsibility; however, he maintained that those tasks were infrequent and had

no impact on his commission. "Generally, when the terms of a contract are contested, the actual terms of the contract are to be determined by the jury . . . ." *Butterfield v Metal Flow Corp*, 185 Mich App 630, 636-637; 462 NW2d 815 (1990).

The servicing requirements of the parties' contract are important because they pertain to the issue of breach. A sales agent who commits the first substantial breach of a commissions contract is not entitled to recover posttermination commissions. See *Butterfield*, 185 Mich App at 637. If account servicing was a term of the contract, which the parties dispute, then being banned from Isringhausen's premises was a breach of the parties' contract because Lyons could no longer perform his servicing obligation. Depending on the significance of the servicing requirements, Lyons's ban could be considered a substantial breach of contract, in which case defendant would not be required to continue performing under the contract. See *id.* Thus, the trial court properly determined that summary disposition was inappropriate.

Plaintiff next argues that the trial court erred by allowing Packer to testify about e-mail communications that Packer had with representatives at Isringhausen after Lyons's termination. Plaintiff contends that the trial court should have excluded Packer's testimony because the e-mails were never produced during discovery. Plaintiff preserved this issue for our review by objecting to the admission of Packer's testimony on the same basis that it now asserts on appeal. See *Klapp v United Ins Group Agency, Inc (On Remand)*, 259 Mich App 467, 475; 674 NW2d 736 (2003). The decision to admit evidence is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786

NW2d 567 (2010). We also review for an abuse of discretion a trial court's decision whether to impose discovery sanctions. *McDonald v Grand Traverse Co Election Comm*, 255 Mich App 674, 697; 662 NW2d 804 (2003). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry*, 486 Mich at 639.

Pursuant to MCR 2.313(A), a party may move for an order compelling discovery. MCR 2.313(B)(2) sets forth various mechanisms by which a trial court may enforce a discovery order and sanction disobedient parties. MCR 2.313(B)(2) applies, however, only "[i]f a party . . . fails to obey an order to provide or permit discovery . . . ." Because plaintiff did not file a motion to compel production of the posttermination e-mails, the trial court never entered an order compelling their production.

Plaintiff argues that it had no opportunity to file a motion to compel discovery because it was unaware that the posttermination e-mails existed. A review of Packer's deposition testimony, however, shows otherwise. During his deposition, plaintiff's counsel questioned Packer at length regarding e-mails that had been exchanged after Lyons's termination and specifically asked whether such e-mails had been produced. Packer responded, "I produced a lot of e-mails and they were—I didn't differentiate as far as I recollect between before and after. You asked for all e-mails involved with the customer and I gave them to you as far as I recollect." Plaintiff's counsel further questioned Packer regarding posttermination e-mails, and Packer testified that such communications had occurred. Counsel asked Packer to produce the e-mails if he had not already done so, and Packer agreed to do so. Because Packer admitted that posttermination e-mails had been exchanged, plaintiff

was aware of their existence. Therefore, the record does not support plaintiff's contention that it was unaware that the e-mail communications existed. Because plaintiff was aware of the communications, it could have filed a motion to compel their production.

In any event, even if the trial court erred by admitting Packer's testimony, the error does not warrant reversal. Error requiring reversal may not be predicated on an evidentiary ruling unless a substantial right of the party was affected. MRE 103(a); *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). The trial court based its decision primarily on Lyons's testimony rather than on Packer's. Regarding whether the 2005 project was "on autopilot," the trial court stated, "I didn't think some of Mr. Packer's testimony was well enough documented to be convincing, but quite frankly I thought Mr. Lyons' testimony was . . . ." The court continued:

> I mean—I mean his—your own deposition testimony and testimony here about different things that you did with pricing, even some of the liaison with this . . . this PPAP, I mean the visits, the—the—the trip reports, these don't suggest to me, you know, an autopilot contract that things are just coming in if it's on autopilot.

Thus, even if the trial court erred by admitting Packer's testimony regarding posttermination e-mail communications, any error was harmless given the court's reliance on Lyons's testimony, which it found more convincing.

Plaintiff next argues that the trial court's judgment was against the great weight of the evidence because it was contrary to the court's determination that the procuring-cause doctrine was applicable, which plaintiff asserts the court determined in its ruling on plaintiff's motion for reconsideration. Plaintiff contends that the

trial court's "about face" regarding the applicability of the procuring-cause doctrine contravened the "law of the case." "Whether the law of the case doctrine applies is a question of law that we review de novo." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). Further, under the great weight of the evidence standard, we defer to the trial court's findings of fact, which we will affirm unless the evidence clearly preponderates in the opposite direction. *McIntosh v McIntosh*, 282 Mich App 471, 474; 768 NW2d 325 (2009).

Plaintiff's argument is somewhat difficult to understand. It appears that plaintiff is arguing that because the procuring-cause doctrine applies only when a contract is silent regarding posttermination sales commissions, and the trial court determined pretrial that the procuring-cause doctrine was applicable, it must have determined that the parties' contract was silent regarding posttermination commissions. Plaintiff contends that the trial court's subsequent determination that Lyons was entitled to a five percent commission only if he serviced the account contravened the court's previous ruling because it showed that the parties had reached an agreement regarding posttermination sales commissions.

The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. *Grievance Administrator v Lopatin*, 462 Mich 235, 259-260; 612 NW2d 120 (2000). There was no ruling by an appellate court in this case. Rather, the trial court granted plaintiff's motion for reconsideration and reversed its previous decision granting summary disposition for defendant. "[A] trial court has unrestricted discretion to review its previous decision," and "the law of the case doctrine [does] not preclude [a] trial court

from reversing its prior decision." *Meyer & Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 52-53; 698 NW2d 900 (2005). Therefore, the law of the case doctrine is inapplicable.

In addition, plaintiff's argument that the trial court's judgment contravened its order granting plaintiff's motion for reconsideration lacks merit. In its initial order granting summary disposition in defendant's favor, the trial court determined that Lyons's servicing obligations were significant enough to render the procuring-cause doctrine inapplicable. The court also determined that the doctrine was inapplicable because Lyons committed the first material breach given the significance of his servicing obligations. Contrary to plaintiff's argument, in its decision granting plaintiff's motion for reconsideration, the trial court never determined that the procuring-cause doctrine was applicable to the facts of this case. Rather, the court simply determined that there was an issue of fact regarding Lyons's servicing obligations. Moreover, the court determined that a question of fact existed regarding the issue of breach because the breach became significant only if Lyons's servicing obligations were significant. Therefore, the trial court's judgment did not contravene its order granting plaintiff's motion for reconsideration.

Further, the trial court's findings were not against the great weight of the evidence. The court concluded, based on Lyons's own testimony, that Lyons was required to perform significant account servicing. Lyons testified that his involvement in the 2005 project was minimal, but he acknowledged that he worked with Isringhausen on pricing issues and was part of defendant's negotiation team, though he did not have authority to set prices. Lyons also dealt with some quality issues on behalf of defendant. He testified that at the time of his termination he went to

Isringhausen's premises once a week. He maintained that although the majority of his time there was spent on new projects, about 25 percent of his time was dedicated to the 2005 project.

In addition to Lyons's testimony, the trial court relied on several e-mails that Lyons sent to defendant, which defendant characterized as trip logs. The e-mails generally discussed Lyons's trips to Isringhausen and summarized the issues with which he had dealt when he was there. Several e-mails related to pricing discussions that Lyons had with Isringhausen personnel. Lyons had also discussed with Isringhausen personnel the implementation of a cost reduction plan, quality issues, tooling repairs, and the preproduction part-approval process.

From this evidence, the trial court concluded that Lyons was required to perform significant account servicing. The trial court reasoned, in pertinent part:

> The—I think the key is, you know, we've talked about is, was this sort of something that was on autopilot where there are just some—some de minimous [sic] or ministerial customer service obligations. I didn't think some of Mr. Packer's testimony was well enough documented to be convincing, but quite frankly I thought Mr. Lyons' testimony was—I thought these were—that there were more— certainly way more than de minimous [sic] or—or ministerial work. I mean—I mean his—your own deposition testimony and testimony here about different things that you did with pricing, even some of the liaison with this . . . this PPAP, I mean the visits, the—the—the trip reports, these don't suggest to me, you know, an autopilot contract that things are just coming in if it's on autopilot. And some of the trip report stuff was related to new business. But—and I'm—I'm trying to—that's what makes it harder.
>
> If—if it was no—if this was your only dealings with Isringhausen and this was the only contract there's overwhelming time spent there. You had other business with Isringhausen. You had the new business, which is—is not

part of this. But even taking those off I'm—I'm convinced that there was—there was some significant customer service obligations.

They weren't, you know, every week like in the one case, you know, going and checking the shelves, how much needs to be done, but they were periodically things with pricing and this that [sic] came up that were significant. I don't think it . . . took a full time person to replace you by any means. But I think it was certainly more than—than an hour a week on average if you look at what happened from the time this—you know, not count this—this start up time. Even if you disregard, you know, the . . . 2005, but from the—from those years on with the changes that came about in this and your own description of it, I thought there . . . were significant account manager responsibilities.

Now were these just sort of volunteer things to sort of keep the customer happy to show that you were attentive and—and, you know, just doing it in your own regard without being required to, but I don't think that's what it was. I think you were—I think this was part of your—of your agreement to provide account service responsibilities. They were—they would vary from time to time how much they were. It—if it was just sort of a volunteer thing I wouldn't—these trip reports I mean I'd say, this—I'm not required to do this, just send me my five percent check, I'm not going to send you these reports. There's certainly some evidence that that was expected of you.

When that's expected that you're going to do this and it's of some significance, way less than full time, that's why I think this is sort of a—of a windfall. I mean it doesn't mean—you know, I'm not saying that they—everything that—I mean Isringhausen did this on their own that they banned you. And they're not blaming them for that. I think it turned out to be a windfall for them because I don't think it took nearly as much to replace you and to—to fill in these things as—as you would have earned.

But I think they had to replace you with someone. Someone had to take over this. It wasn't—I don't think it was, you know, ninety five percent of Mr. Packer's time, but

if it was fifteen or twenty percent I think that is sufficient. It isn't required to be a full time job. To me it is just far more from your own testimony more than de minimous [sic] or—or ministerial.

\* \* \*

And then when you get banned I think that is—I think that is a breach of the agreement. I think that was a first breach. I think it takes it out of the context of simply an autopilot procuring cause. This was—there were responsibilities with this. You can no longer do those.

The trial court's findings were not against the great weight of the evidence.

Finally, plaintiff argues that the trial court misinterpreted the procuring-cause doctrine by focusing on duties that Lyons performed before his termination, instead of focusing on the servicing obligations that defendant was required to perform after Lyons's termination. Plaintiff's argument lacks merit. The trial court did not misinterpret the procuring-cause doctrine. Rather, it heard testimony and admitted evidence regarding Lyons's servicing obligations because such testimony was relevant to the obligations that defendant was required to perform after Lyons's termination. As previously discussed, the evidence did not clearly preponderate against the trial court's finding that Lyons was required to perform significant servicing obligations in order to receive his five percent commission. Accordingly, plaintiff's argument lacks merit.

Affirmed. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

Ronayne Krause, P.J., and Fort Hood, J., concurred with Donofrio, J.