# STATE OF MICHIGAN

# COURT OF APPEALS

POLARIS CONSTRUCTION, INC.,

Plaintiff-Appellee,

v

NICOLA DELICATA,

Defendant-Appellant.

UNPUBLISHED
November 17, 2015

No. 322094
Wayne Circuit Court
LC No. 09-031105-CH

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right the judgment entered for plaintiff, following a jury trial, in the amount of $132,705.45. The jury found defendant liable under both breach of contract and unjust enrichment theories. We affirm.

In a prior appeal in this case, this Court summarized the underlying facts and procedural history to that point in time:

> This case stems from water damage to a commercial building in Detroit. Defendant owned the building and leased a portion of it to Confidential, Inc. (Confidential), which operated a nightclub and restaurant in the leased space. On January 19, 2009, a water pipe in the nightclub burst, causing damage to both the nightclub and restaurant as well as to a portion of the building not leased to Confidential. After the water damage was discovered, Peter Arabo, Confidential's president, contacted plaintiff to perform the remediation work. Robert Kato, plaintiff's head of operations, met with Arabo and defendant at the building. According to Kato and Arabo, defendant authorized plaintiff to proceed with the remediation work.

> Pursuant to the terms of its lease agreement with defendant, Confidential maintained insurance coverage that included coverage for water damage to the leased premises. Confidential filed a claim with its insurer, Badger Mutual Insurance Company, which paid $254,989 to plaintiff and Confidential for the remediation work. At issue in this case is whether defendant had a contract with plaintiff to perform remediation work on the nonleased portion of the building and whether defendant owed plaintiff $120,000, which was the balance of the total contract amount of $374,989 for the entire building. Plaintiff filed a claim of lien

-1-

against the property in the amount of $120,000 and filed a complaint against defendant seeking foreclosure of the lien and alleging breach of contract, unjust enrichment, and fraud.

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10) arguing that no enforceable contract existed between he [sic] and plaintiff for the work performed. Defendant also argued that he did not commit fraud because his assurance to Kato that Kato would be paid for the work performed was not false at the time that it was made. Regarding plaintiff's unjust enrichment claim, defendant argued that the work that plaintiff performed did not directly benefit defendant. Further, defendant argued that plaintiff's lien foreclosure claim failed because plaintiff did not serve a notice of furnishing as required by MCL 570.1111(4). The trial court granted defendant's motion. Thereafter, the court denied plaintiff's motion for reconsideration and granted defendant's motion for attorney fees and costs. The court awarded defendant attorney fees and costs totaling $29,183.94. [*Polaris Constr, Inc v Delicata*, unpublished opinion per curiam of the Court of Appeals, issued June 20, 2013 (Docket No. 308254), p 2.]

In the previous appeal, this Court held that "plaintiff presented sufficient evidence to establish a genuine issue of material fact with respect to its breach of contract and unjust enrichment claims" and therefore reversed in part and remanded for further proceedings on those claims only. *Id*. at 1.

On remand, defendant filed a motion in limine to exclude evidence regarding ownership of the building that was inconsistent with the Wayne County title records, asserting that he does not own the building at issue and that it is instead owned by his corporation, N.D. Property Management, Inc. (ND).[1] The trial court denied the motion.

During defense counsel's opening statement, the trial court sustained two objections by plaintiff's counsel to assertions that defendant did not own the building. Outside the presence of the jury, the trial court stated that defendant could refer to the corporation that owned the building, but could not argue that defendant was not liable because ND, rather than defendant, owned the building.

At trial, Jeffrey Moss testified that he is a licensed public adjuster who represents policyholders, and that he was engaged by Arabo to represent him in his insurance claim for the water damage. Moss testified that he met plaintiff's owner, Kato, on site and observed that

---

[1] Plaintiff initially had brought claims not only against defendant, but additionally against ND and Michigan Commerce Bank. As this Court noted in the earlier appeal in this case, the trial court had dismissed the claims against ND and Michigan Commerce Bank, they were not parties to the earlier appeal, and this Court's reference to "defendant" referred to the individual defendant only. The record in fact reflects that the claims against ND were dismissed by stipulation of the parties on December 1, 2010.

plaintiff was doing mitigation work to suck the water up and to dry the wet building materials. Moss saw plaintiff's equipment in both the bar area and the common areas of the building; the common areas included a stairwell and an elevator shaft from which water had to be vacuumed. During a meeting at the building, Moss was present for a conversation between defendant and Kato regarding repair of areas not leased to Confidential. Moss testified that at every meeting he had with defendant, defendant represented himself to be the owner of the building.

Defendant testified that he purchased the building, which is located at the corner of Congress and Shelby, in 1996 for approximately $885,000. Defendant said that common areas of the building included an entranceway, elevator shaft, and stairwells. Defendant denied that he ever hired plaintiff or had plaintiff do work for defendant in connection with the water loss. Defendant said that he "never had a contract or verbal or written for Mr. Kato at all personally or for the building." Defendant denied that he ever promised to pay Kato for mitigation work on the building or that defendant had any conversation with Kato authorizing him to do work on the building. Defendant acknowledged that he saw Kato and people who defendant assumed were plaintiff's employees on site doing work on the building for Arabo. Defendant also acknowledged that plaintiff did some emergency repairs for Arabo but denied that plaintiff was "contracted at any time for myself or the building." Defendant testified that he thought that Kato was working on behalf of Arabo. Defendant denied that he directly benefited from any work done by plaintiff, and further asserted that plaintiff did not perform the work plaintiff claims to have done in this case. Defendant testified that neither he nor any of defendant's entities made any payments to plaintiff. Defendant stated he used a general contractor called Isle Restoration, which did mitigation and repair work for defendant related to the water loss.

Defendant testified that ND is "[t]he company that owns the building[,]" and that defendant owns ND. When asked whether Globe Midwest was defendant's adjuster, defendant stated that Globe Midwest is ND's adjuster. Defendant explained that ND was the insured on the insurance policy related to this loss, and was "the building entity" on the lease with Confidential.

Later, defendant was questioned by his own attorney as follows:

*Q*. And there's been some discussion about what the – Judge, I don't want to run a file [sic] to your prior rulings in this case – but at the time you purchased the building, did you form a company to or an entity to buy the building as the titleholder?

*A*. Yes, I did.

*Q*. And what was that company that was formed to hold title to the building?

*A*. The company's name is ND Property Management, Inc.

*Q*. Was it your testimony yesterday, you're the sole shareholder of ND Property Management, Inc., is that correct?

*A*. Yes.

*Q*. Okay. I'm handing you a document that's been marked as Defendant's Exhibit 6, are you familiar with this document, Nick?

*A*. Yes.

*Q*. Can you tell me what that document is?

*A*. On the top it says warranty deed.

*Q*. And what property is that for?

*A*. Known as 205/211 West Congress and 555 Shelby.

*Q*. And is that the building at issue in this case?

*A*. That is correct.

*Q*. And can you tell me who is the named grantee on that warranty deed?

*A*. Conveys and warrants to ND Property Management, Inc., a Michigan Corporation.

*Q*. Okay. And has ND Property Management ever conveyed title to the property to anybody else since 1996?

*A*. No, it has not.

Defense counsel then moved for the admission of the warranty deed as an exhibit, and the court stated, "You're doing exactly what I said you could not do." The court stated that "[t]his case is Polaris Construction versus Nicola Delicata - . . . – and not his company. And I do not want the jury to be confused that it is against his company." Defense counsel asked to lay a foundation for what he sought to admit, and the court then held a sidebar conference on the matter, after which the court stated, "My ruling remains the same."

Kato testified regarding what he claims defendant told him in connection with promising to pay for plaintiff's work on the building:

In my own words, because I can't remember four or five years ago exactly the words he used, but on multiple occasions said we got to get the bar open. I got to collect my rent. They have an event. Let's get this done. On several occasions, those are the words that he used to me while I was there working.

Kato testified that defendant told him that he would be paid for the work. Kato denied that all the work he did was for Arabo. Kato stated that he was called to the site by Arabo on the day that the loss occurred and that plaintiff commenced work either that night or early the next morning. There was no written contract with defendant because it was an emergency job. Kato testified that he met defendant at the building, and defendant was very concerned about the state of the building. Kato testified that plaintiff did the work that it claimed to have done for the

nonleased part of the building, including pumping water out of the elevator shaft, blow drying or removing carpeting, and remediating damage to walls. After the emergency part of the work was done, Kato wrote up a quote of the mitigation costs and delivered it to defendant's office in Troy.

Kato testified that the total amount for the mitigation and repair work was approximately $374,989 for both the tenant and the building owner. The tenant or its insured paid the tenant's share of approximately $254,989. This left an unpaid balance of $120,000. This amount reflected a combination of unpaid mitigation and unpaid "put back" or repair work. Kato testified plaintiff began work prior to arriving at an estimate of the damages, and that eventually an agreement was reached on the total cost of $374,989. Plaintiff received payment from the tenant for its portion but did not receive anything from defendant or defendant's insurer.

On cross-examination, Kato said there were multiple discussions between him and defendant regarding the terms of the oral contract. He stated that defendant "repeatedly said, don't worry about it, let's just get it done, it will be taken care of. Not in those exact words, but as I recall, something like that." When questioned about whether he had asked defendant if defendant would pay Kato for the work that he performed, Kato testified:

> I would assume just by proposing the original mitigation work and him saying let's get this done and having been in all the meetings with him, by him reaffirming every time, let's get it done, I need to collect my rent, we need to get the bar back open, that that was affirmed.

Kato testified that a meeting was held where "everyone" was given the $374,989 figure. There was also an agreement in the meeting with insurance company representatives and the adjusters, including defendant's public adjuster, to allocate 35% to the landlord and 65% to the tenant. When asked whether defendant said he would pay $120,000 of the $374,989, Kato explained: "Not specifically because the numbers didn't come all at one time. As the job was progressing, [defendant] said, you'll be paid, just get it done, I need to get it done. The work will get done." Kato further stated, "It was a number that was determined by the insurance company and [defendant's] representatives."

After plaintiff rested, defense counsel moved for a directed verdict and articulated the following argument:

> Based on the testimony of Mr. Kato the plaintiff's representative in this case, it's defendant's position that they cannot establish that any work was done, any contract was formed, particularly that there was a benefit conferred on the defendant for which the plaintiff has not already been paid. Mr. Kato's own testimony showed that he could not add up the numbers to get to $120,000 in benefits conferred on Mr. Delicata. He could not add up the numbers of work he performed to get to the 254,000 for which he's already received payment. Based on Mr. Kato's own testimony, respectfully request a directed verdict in this case

The trial court denied the motion.

The jury found in plaintiff's favor on both the breach of contract and unjust enrichment claims. Concerning the breach of contract claim, the jury found that defendant made a promise

-5-

to pay plaintiff for the repair work on the building, that plaintiff performed the repair work in reliance on the promise, that defendant breached his promise to pay for the repair work, and that plaintiff suffered damages in the amount of $120,000 as a result of defendant's breach of his promise. With respect to the unjust enrichment claim, the jury found that defendant received a benefit from plaintiff, that it would be inequitable to plaintiff to permit defendant to retain the benefit conferred on defendant, and that the amount of damages awarded for this claim was $120,000.

On May 20, 2014, the trial court entered a judgment in favor of plaintiff and against defendant in the amount of $120,000, plus prejudgment interest in the amount of $12,705.45, for a total judgment in the amount of $132,705.45. This appeal followed.

## II. EVIDENCE OF OWNERSHIP

Defendant argues that the trial court erred in concluding that this Court's prior opinion in this case precluded him from contesting his ownership of the building at issue, or from asserting a defense that any contract was formed with his corporation rather than with him personally and that any unjust enrichment was bestowed only on the corporation. The application of the law of the case doctrine is a question of law that is reviewed de novo. *KBD & Assoc, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 679; 816 NW2d 464 (2012). "We review for an abuse of discretion a trial court's decision to admit or exclude evidence." *Dawe v Bar-Levav & Assoc* (*On Remand*), 289 Mich App 380, 406; 808 NW2d 240 (2010). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *KBD & Assoc, Inc*, 295 Mich App at 677. Any preliminary questions of law are reviewed de novo. *Barnett v Hidalgo*, 478 Mich 151, 159; 732 NW2d 472 (2007).

We agree with defendant that the law of the case doctrine did not preclude defendant from asserting such a defense. Nonetheless, the trial court reached the correct result because defendant should have been barred from challenging his ownership of the building given that defendant admitted in his pleadings that he owned the building. Further, any error was harmless because, despite the trial court's ruling, defendant presented unrebutted testimony that it was his corporation that owned the building, and he thus presented the very defense that he claims he was denied.

"Under the law of the case doctrine, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (quotation marks omitted). A lower court is likewise bound and "may not take action on remand that is inconsistent with the judgment of the appellate court." *Id*. at 260. "Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case. This rule applies without regard to the correctness of the prior determination." *Driver v Hanley*, 226 Mich App 558, 565; 575 NW2d 31 (1997) (citation omitted). "However, the law of the case doctrine applies only to issues implicitly or explicitly decided in the previous appeal." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007) (citation omitted).

This Court's prior opinion did not decide as a matter of law that defendant owned the building. Although this Court did state at one point that defendant owned the building, this Court was not asked to rule on the issue of whether defendant or ND owned the building, nor did the prior opinion suggest that defendant was precluded from contesting his ownership of the building or from asserting any particular defenses, such as by arguing that it was defendant's corporation, rather than defendant individually, that was liable to plaintiff. This Court merely held that issues of material fact precluded summary disposition on plaintiff's breach of contract and unjust enrichment claims. Therefore, the trial court erred to the extent it held that the prior opinion precluded defenses concerning the corporation's ownership of the building. See *Johnson v White*, 430 Mich 47, 55 n 2; 420 NW2d 87 (1988).

Nonetheless, preclusion of evidence or argument challenging defendant's ownership of the building was warranted on another ground. In its complaint, plaintiff alleged that defendant owned the property that is the subject of this litigation. In their answer, defendant and ND admitted this allegation. Defendant did not thereafter move to amend his answer. Also, in a countercomplaint filed by defendant and his corporation that was later resolved, defendant and his corporation alleged that they "are the owners and operators of" the property at issue. Defendant is bound by his admissions in the pleadings that he owned the building, and therefore, absent amendment, waived any challenge to that admission. *Angott v Chubb Group Ins*, 270 Mich App 465, 469-472; 717 NW2d 341 (2006); *Lichnovsky v Ziebart Int'l Corp*, 123 Mich App 605, 608; 332 NW2d 628 (1983); MCR 2.111(E)(1). Defendant's attempts to argue or admit evidence that he did not own the building should therefore have been rejected as inconsistent with his admissions in the pleadings. Additionally, defendant in his individual capacity agreed to the dismissal of ND from the case; further, as the sole shareholder of ND, he directed ND's agreement to its dismissal. On that very same day, defendant filed a motion for summary disposition in which he referred to himself as the owner of the building. Thus, by agreeing to the dismissal of ND, referring to himself in pleadings and motions as the owner of the building, and now arguing in effect that plaintiff's claims are really against ND, defendant was complicit in the creation of the error he alleges on appeal. See *Hodge v Parks*, 303 Mich App 552, 556; 844 NW2d 189 (2014) ("A party cannot stipulate with regard to a matter and then argue on appeal that the resulting action was erroneous.") This Court will not reverse a trial court's decision if it reaches the correct result even if for an incorrect reason. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 508-509; 741 NW2d 539 (2007).

Further, even if the trial court erred in precluding evidence on this matter, any error was harmless because defendant presented unrebutted testimony that ND was the owner of the building. "A trial court error in admitting or excluding evidence will not merit reversal unless a substantial right of a party is affected, MRE 103(a), and it affirmatively appears that failure to grant relief is inconsistent with substantial justice, MCR 2.613(A)." *Lewis v LeGrow*, 258 Mich App 175, 200; 670 NW2d 675 (2003) (citations omitted). Despite the trial court's ruling, defendant testified that ND owns the building. Defendant also testified that ND was the insured on the insurance policy related to this loss and that it was "the building entity" on the lease with the tenant. Although the trial court refused to admit into evidence the warranty deed and other documents establishing the corporation's ownership of the building, those documents would have been cumulative of defendant's unrebutted testimony that ND owned the building. "Any error resulting from the exclusion of cumulative evidence is harmless." *Badiee v Brighton Area Sch*, 265 Mich App 343, 357; 695 NW2d 521 (2005). The jury was fully apprised of the relevant

facts concerning this issue and had the option of finding that no contract existed between plaintiff and defendant, and that plaintiff was not unjustly enriched, by virtue of ND's ownership of the building.

We conclude that the trial court did not err in its evidentiary rulings concerning defendant's ownership of the building.

## III. DENIAL OF DIRECTED VERDICT

Defendant next argues that the trial court erred in denying his motion for a directed verdict, because Kato's recollection of what defendant supposedly promised Kato was too vague, unclear, and indefinite to comprise an enforceable contractual promise. We disagree. A trial court's decision on a motion for a directed verdict is reviewed de novo. *Genna v Jackson*, 286 Mich App 413, 416; 781 NW2d 124 (2009). This Court views the evidence in the light most favorable to the nonmoving party. *Id*. "A directed verdict is appropriate only when no factual question exists upon which reasonable minds could differ." *Roberts v Saffell*, 280 Mich App 397, 401; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009). "When reviewing a trial court's decision on a motion for a directed verdict, this Court recognizes the unique opportunity of the jury and the trial judge to observe witnesses and the fact-finder's responsibility to determine the credibility and weight of the testimony." *Foreman v Foreman*, 266 Mich App 132, 136; 701 NW2d 167 (2005) (quotation marks omitted). "The existence and interpretation of a contract are issues of law reviewed de novo." *Dunn v Bennett*, 303 Mich App 767, 774; 846 NW2d 75 (2014).

"A party claiming a breach of contract must establish (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Dunn*, 303 Mich App at 774 (quotation marks omitted). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015) (citation omitted). "A unilateral contract is one in which the promisor does not receive a promise in return as consideration." *In re Certified Question from the United States Sixth Circuit Court of Appeals*, 432 Mich 438, 446; 443 NW2d 112 (1989). In a unilateral contract, the promisor makes an offer or promise that the promisee accepts by performing the act upon which the promise is based. *Cunningham v 4-D Tool Co*, 182 Mich App 99, 106; 451 NW2d 514 (1989). The promisee's reliance on the promise is deemed sufficient consideration to render the promise legally binding. *Id*. The promisee is not required to "do more than perform the act upon which the promise is predicated in order to legally obligate the promisor." *Certified Question*, 432 Mich at 446.

Defendant argues that plaintiff failed to present evidence of sufficiently clear oral promises to give rise to a unilateral contract. Statements alleged to give rise to an oral contract must "clearly permit a construction which supports the asserted meaning." *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 641; 473 NW2d 268 (1991) (opinion of Riley, J.). Additionally, a promise must be clear and definite to support a claim for liability under an implied oral contract. See *Barber v SMH (US), Inc*, 202 Mich App 366, 376; 509 NW2d 791 (1993). Here, defendant fails to articulate precisely *why* he believes Kato's testimony does not establish a clear

and definite promise. Instead, defendant merely asserts in a cursory fashion that Kato's testimony was vague, unclear, and indefinite such that it did not comprise an enforceable contractual promise.

In any event, we conclude that Kato's testimony was sufficient to present a factual question on which reasonable minds could differ concerning whether defendant made a clear and definite offer or promise to pay plaintiff for its work on the building. See *Roberts*, 280 Mich App at 401. Kato testified regarding what he claims defendant told him in connection with promising to pay for plaintiff's work on the building:

> In my own words, because I can't remember four or five years ago exactly the words he used, but on multiple occasions said we got to get the bar open. I got to collect my rent. They have an event. Let's get this done. On several occasions, those are the words that he used to me while I was there working.

Kato testified that defendant told him that Polaris would be paid for the work it performed on the building. He testified that there were multiple discussions between him and defendant regarding the terms of the oral contract, including a meeting with defendant and insurance personnel where a final bill was negotiated.

Overall, Kato's testimony supports the conclusion that a factual question existed on which reasonable minds could differ regarding whether defendant made an enforceable oral promise for the purpose of a unilateral contract. Kato testified that defendant repeatedly told Kato to get the job done because the bar had to be reopened so that defendant could collect his rent, and defendant told Kato that plaintiff would be paid. This was sufficient to create a factual question of whether defendant made an offer or promise that plaintiff accepted by performing the remediation work on the building.

We also note that defendant does not present an argument on appeal regarding his entitlement to a directed verdict on plaintiff's unjust enrichment claim. As the trial court explained, the breach of contract and unjust enrichment claims were alternative theories of liability. Therefore, even if the trial court had erred in denying defendant's motion for a directed verdict on the breach of contract claim, defendant does not challenge the trial court's denial of a directed verdict on the unjust enrichment claim, for which plaintiff was awarded the same damages. Thus, even if the trial court erred, the error was harmless. See *Willoughby v Lehrbass*, 150 Mich App 319, 329-330; 388 NW2d 1986.

Affirmed.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra

-9-