*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTHER G. BENNETT REVOCABLE TRUST.

---

LINDA DICE, MARCIA BENNETT-VEIGEL, and CAROL HARRINGTON

        Plaintiffs-Appellants,

v

MICHAEL R. ZIMMERMAN, Individually and as Successor Trustee of the ESTHER G. BENNETT REVOCABLE TRUST, YEO & YEO, PC, and TODD E. BENNETT,

        Defendants-Appellees.

UNPUBLISHED
June 30, 2022

Nos. 355196; 357180
Midland Probate Court
LC No. 2017-000126-CZ

---

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

PER CURIAM.

This familial probate dispute comes before us for a second time. Plaintiffs are three sisters who, following the death of their mother, Esther G. Bennett, filed a lawsuit against defendants, including their brother Todd, raising many claims about the validity of the Esther G. Bennett Revocable Trust (the Trust). After this case returned to the probate court on remand, the probate court ultimately dismissed all of plaintiffs' claims against defendants on summary disposition and as a sanction for discovery violations.

Over several years, plaintiffs persistently violated discovery orders seeking electronic communications and misrepresented their retention of expert witnesses. Because the probate court's order dismissing plaintiffs' claims as a discovery sanction was not an abuse of discretion, we affirm.

-1-

# I. FACTUAL AND PROCEDURAL HISTORY

This Court summarized many of the relevant background facts in its first decision, *Dice v Zimmerman*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2019 (Docket No. 342608), pp 2-4:

> Following the death of her husband, in 1995, Esther settled the Trust. The assets contained in the Trust primarily consisted of Esther's interest in real property and a closely held business—Earl D. Bennett Construction, Inc. (Bennett Construction). The Trust generally provided that the assets would be equally distributed to Esther's children upon her death.
>
> During her lifetime, Esther was to be the sole trustee of the Trust, and reserved in herself a number of rights and powers as the settlor, including the right to amend, modify, or revoke the Trust, and to designate different trustees or cotrustees at any time to act on Esther's behalf. The Trust also provided that, if Esther was ever incapacitated and her incapacity certified by two doctors, any further actions taken by Esther with respect to the Trust would be void, "and during such period of time th[e] Trust shall be irrevocable and not amendable." The Trust further listed Gordon C. Birkmeier as Esther's successor trustee, and provided that, if Birkmeier died or resigned, Chemical Bank and Trust (Chemical Bank) and plaintiff Carol Harrington would be nominated successor cotrustees.
>
> In 2002, Esther executed the first of several amendments to the Trust.
>
> * * *
>
> In 2007, Dr. Christopher Hough performed a geriatric assessment of Esther, and in a letter dated April 18, 2007, informed Esther's primary care physician—Dr. Michael Miller—that Esther was experiencing memory loss and needed "help[] with her finances and medications." Two months later, Esther appointed defendant accounting firm, Yeo & Yeo, PC (Yeo), to act as her cotrustee, with the condition that Yeo would only serve as trustee for as long as Birkmeier was associated with the firm. Shortly after appointing Yeo, Esther executed the third amendment to the Trust, indicating that Yeo would be nominated to act as sole trustee upon Esther's death or resignation so long as Birkmeier was associated with the firm, and at such time that Birkmeier was no longer associated with the firm, Chemical Bank would serve as Yeo's successor.
>
> One year after Dr. Hough performed his geriatric assessment, on May 6, 2008, Dr. Miller noted on a prescription pad that Esther was "not capable of participating in business affairs[.]" Shortly thereafter, presumably acting in accordance with the Trust's provision regarding Esther's incapacity, defendant Michael R. Zimmerman sent a letter to Esther on behalf of defendant Yeo, which stated, "Please accept this letter as our acceptance to act as Trustee of the Esther G. Bennett Revocable Trust with Gordon C. Birkmeier representing the firm as Trustee."

\* \* \*

In 2012, Esther executed the fifth and final amendment to the Trust. The amendment revoked all previous amendments, provided that Zimmerman "and/or a qualified person of Yeo & Yeo PC CPA" would become sole trustee upon Esther's death or incapacity, and reaffirmed that Todd would receive the voting shares of Bennett Construction. The amendment did not provide for distribution of any nonvoting shares, and instead, the day before executing the 2012 amendment, Esther settled a second trust—the Esther G. Bennett Irrevocable Trust (the Irrevocable Trust)—which she funded with the nonvoting shares of Bennett Construction for the purpose of distributing them to plaintiffs upon her death.

Esther died on May 14, 2014, and Zimmerman was nominated to serve as her personal representative. Zimmerman sent a letter to plaintiffs indicating that Esther appointed him trustee of the "Bennett Family Trust Established on May 12, 2014." The letter further indicated that Zimmerman was settling Esther's estate, after which he would begin distributing the Trust estate.

\* \* \*

On February 16, 2017, plaintiffs filed the complaint that led to this appeal. Plaintiffs requested a declaration that all amendments to the Trust executed after April 2007 were void because Esther did not have capacity to execute them, and because Esther was unduly influenced by Todd and Zimmerman. Plaintiffs alleged fraud and misrepresentation, breach of fiduciary duties, and conversion of trust assets against all three defendants, and sought to remove Zimmerman as trustee, surcharge him, and replace him with Chemical Bank. [Footnote omitted.][1]

In the first set of probate court proceedings, Bennett moved for partial summary disposition. The probate court dismissed plaintiffs' claims for declaratory relief and undue influence, finding that they were barred by a statute of limitations in the Michigan Trust Code, MCL 700.7604. The court also determined that plaintiffs lacked standing to pursue a conversion claim on behalf of the Trust. On appeal, we reversed, concluding that the statute of limitations relied on by the probate court did not apply and that plaintiffs were authorized as beneficiaries to pursue a conversion claim. *Dice*, unpub op at 8-9.

On remand in 2019, discovery resumed. In May 2020, defendants filed separate motions for summary disposition under MCR 2.116(C)(7), (8), and (10), seeking dismissal of all of plaintiffs' claims. Further, Bennett moved to strike plaintiffs' conversion count because plaintiffs had not complied with a December 2019 discovery order. Zimmerman and Yeo also moved to

---

[1] Hereinafter, when necessary to distinguish between defendants, we will collectively refer to Zimmerman in his individual capacity and Yeo & Yeo, PC as "Zimmerman and Yeo," to Todd Bennett as Bennett, and to Zimmerman in his capacity as trustee as Trustee Zimmerman.

strike plaintiffs' claims and experts, arguing that plaintiffs had failed to produce e-mails and necessary information on expert witnesses.

Ultimately, the probate court issued several orders on October 1, 2020, granting summary disposition in favor of defendants on all of plaintiffs' claims with cross-references in each opinion to other opinions in the case. This included a cross-reference to an opinion on Trustee Zimmerman's motion for summary disposition, on which the probate court did not actually file an opinion. The probate court also granted defendants' motions to strike on October 1, 2020 and ordered dismissal as a sanction for plaintiffs' "willful and intentional" discovery violations. The opinion and order imposing discovery sanctions declared that it was the final order closing the case. However, on April 27, 2021, the probate court issued the opinion granting Trustee Zimmerman's motion for summary disposition.

These consolidated appeals followed.[2] In Docket No. 355196, plaintiffs appeal the probate court's orders granting summary disposition to defendants Zimmerman and Yeo, and Bennett. Plaintiffs also appeal the probate court's order granting defendants' motions to strike all of plaintiffs' claims as a discovery sanction. In Docket No. 357180, plaintiffs appeal the probate court's order granting summary disposition to Trustee Zimmerman.

## II. DISCOVERY VIOLATIONS

Plaintiffs argue that the probate court erred by dismissing their case as a sanction for violating discovery orders. We review the trial court's decision to impose discovery sanctions for an abuse of discretion. *KBD & Assoc, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 677; 816 NW2d 464 (2012). The trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes. *Id*. We review de novo the application of MCR 2.313, under which the probate court authorized sanctions. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011). Any factual findings underlying the probate court's decision are reviewed for clear error. *Id*. "A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

MCR 2.313(B)(2) authorizes the trial court to issue a range of sanctions against a party if it fails to obey the court's discovery orders:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:
>
> (a) an order that the matters regarding which the order was entered or other designated facts may be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

---

[2] *In re Bennett Revocable Trust*, unpublished order of the Court of Appeals, entered June 1, 2021 (Docket Nos. 355196 and 357180).

(b) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;

(c) an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, *dismissing the action or proceeding* or a part of it, or rendering a judgment by default against the disobedient party[.] [Emphasis added.]

Similarly, a party's failure to supplement discovery can provide a basis for sanctions:

If a party fails to provide information or identify a witness . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

\* \* \*

(c) may impose other appropriate sanctions, *including any of the orders listed in MCR 2.313(B)(2)(a)-(c)*. [MCR 2.313(C)(1) (emphasis added).]

Discovery sanctions must be "proportionate and just" and should conform to the severity of the violation. *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 87-88; 618 NW2d 66 (2000). "Dismissal is a drastic step that should be taken cautiously." *Brenner v Kolk*, 226 Mich App 149, 163; 573 NW2d 65 (1997). The trial court should "carefully consider the circumstances of the case" to determine whether the sanction of dismissal is just and proper. *Kalamazoo Oil Co*, 242 Mich App at 86 (quotation marks and citation omitted). Dismissal is generally appropriate only when the party intentionally, rather than accidentally, refuses to comply with discovery. *Hardrick*, 294 Mich App at 661.

In this case, Zimmerman and Yeo filed a motion to strike plaintiffs' claims, in which they argued that the probate court should dismiss the case given plaintiffs' repeated disregard of court orders on discovery. In particular, Zimmerman and Yeo focused on plaintiffs' failure to produce e-mails and failure to supplement their discovery to identify their expert witnesses' subject matters of testimony. Bennett joined the motion by filing a concurrence. The probate court granted the motion to strike, dismissed plaintiffs' claims as a sanction for discovery violations, and wrote that this final order "close[d] the case."

Plaintiffs argue that the probate court erred when it found that they failed to provide discovery related to their e-mails because they had never been ordered to provide the discovery.

In April 2017, Zimmerman and Yeo issued interrogatories and a request for production of "any and all electronically stored items" related to this litigation. Bennett similarly requested production of electronically stored items relating to communications of plaintiffs, defendants, and Esther Bennett. In a July 5, 2017 order, the probate court stated that plaintiffs "shall" respond to Zimmerman and Yeo's and Bennett's "interrogatories and requests for production of documents

on or before June 23, 2017."[3]  Accordingly, the probate court had ordered plaintiffs to comply with the request for electronically stored information, which included the parties' e-mails, as far back as July 2017.  The court's use of "shall" makes clear that the order was not permissive, but mandatory.  See *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008).

In December 2017, because plaintiffs had produced no e-mails, Zimmerman and Yeo's counsel subpoenaed Harrington's employer for e-mails between Harrington and her sister; Harrington had testified that she used her work e-mail and computer to communicate with her sisters.  Plaintiffs moved to quash the subpoena, but the probate court denied the motion and ordered that all documentation received from Harrington's employer be sent "directly to [Zimmerman and Yeo's counsel] and [plaintiffs' counsel] and may be disseminated to all counsel of record in this matter."  Harrington's employer complied with the subpoena and turned over a flash drive of Harrington's relevant e-mails.  Upon an initial review, Zimmerman and Yeo's counsel noticed that there were many e-mails between Harrington and her sisters, but there were also several e-mails involving plaintiffs' counsel that were likely protected by attorney-client privilege.  Following his ethical obligation, Zimmerman and Yeo's counsel informed plaintiffs' counsel in early 2018 of his finding and requested that plaintiffs' counsel provide all non-privileged e-mails from the flash drive to defendants.

Plaintiffs assert that there was no court order requiring them to sort through the subpoenaed e-mails and segregate any privileged content.  But the original July 2017 discovery order required plaintiffs to comply with defendants' request for electronically stored information.  We decline to interpret that order so narrowly as to remove any obligation that plaintiffs had to remove or redact privileged material and timely disclose the requested e-mails after Zimmerman and Yeo subpoenaed Harrington's employer.  While we recognize that sorting through the e-mails was a large undertaking for plaintiffs, it does not excuse the lengthy delay that ensued.  It is also misplaced for plaintiffs to suggest that they could have simply declined to sift through the privileged e-mails without violating any discovery order.

Further, over a roughly three-year period,[4] Zimmerman and Yeo's counsel inquired several times about the status of the parties' electronic discovery requests.  Following the first appeal, Zimmerman and Yeo's counsel e-mailed plaintiffs' counsel to request the e-mails in September 2019, November 2019, December 2019, and March 2020.  Time and again, plaintiffs' counsel either failed to respond, or if he did respond, he did not produce the requested e-mails.  Pursuant to the probate court's amended scheduling order, the parties were required to complete discovery on March 24, 2020, but plaintiffs did not provide their e-mails until May 1, 2020.  Scheduling

---

[3] This June 2017 date appears to have been in error.

[4] The probate court proceedings were stayed from July 16, 2018 until at least July 30, 2019.  See *Dice v Harrington*, unpublished order of the Court of Appeals, entered July 16, 2018 (Docket No. 342608) (granting plaintiffs' delayed application for leave to appeal and staying the lower court proceedings pending resolution of the appeal); *Dice v Harrington*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2019 (Docket No. 342608).  Even so, plaintiffs had substantial time before and after the stay of proceedings during which to comply with discovery orders, and they continually failed to do so.

"promotes the efficient management of the trial court's docket" and failing to respect the court's scheduling orders "severely curtail[s] the trial court's ability to manage its docket . . . ." *Kemerko Clawson, LLC v RxIV Inc*, 269 Mich App 347, 350-351; 711 NW2d 801 (2005). In sum, plaintiffs largely disregarded the July 2017 order, persistently ignored requests to produce e-mails provided by Harrington's employer, and ultimately disclosed the e-mails more than one month after the scheduled close of discovery. The probate court did not err by finding that the repeated failure to turn over the e-mails was "willful and intentional" and that it supported the order dismissing plaintiffs' case as a discovery sanction.

Next, the probate court found that plaintiffs "failed to state the opinions and subject matter that their expert witnesses would testify about because they were never retained." This finding was well-supported by the record evidence.

Under MCR 2.302(B)(4), defendants had a right to request the expert witnesses' subject matter and opinions, and to depose the experts that plaintiffs expected to testify at trial:

> (a)(*i*) A party may through interrogatories require another party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

> (*ii*) A party may take the deposition of a person whom the other party expects to call as an expert witness at trial.

In response to Zimmerman and Yeo's April 2017 interrogatories, plaintiffs identified four expert witnesses.[5] Included in plaintiffs' response was general information about each witnesses' area of expertise and their planned topic of testimony. In November 2019, Zimmerman and Yeo requested that plaintiffs supplement their responses to provide more specific information on the subject matter of testimony of three of the witnesses. Zimmerman and Yeo's counsel also subpoenaed and scheduled depositions of these three experts in hopes of receiving additional information directly from them. In response, each expert denied having been retained by plaintiffs in this case. The depositions therefore did not go forward. Plaintiffs' counsel objected to defendants' counsel issuing subpoenas to the expert witnesses, stating in a December 2019 e-mail that "you certainly should not have contacted *my experts* directly and scheduled depositions without first contacting me." (Emphasis added).

Plaintiffs' counsel continued to represent in his communications with opposing counsel that he had retained expert witnesses, despite each witness denying having been retained by

---

[5] The fourth purported expert was Dr. Christopher Hough, who had conducted the geriatric assessment on Esther Bennett. To the extent Dr. Hough would have testified about Esther's medical condition and his interactions with Esther and other family members, Dr. Hough was a fact witness.

plaintiffs. As Zimmerman and Yeo's counsel explained in a March 2020 e-mail to plaintiffs' counsel:

> You identified 3 experts. Each of the 3 contacted me upon receipt of the subpoena . . . . Each of the 3 individuals indicated that they were not retained or otherwise by you and had no idea about the case. I want deposition dates for each of the experts you intend on calling to trial by the end of the day tomorrow.

Plaintiffs' counsel did not respond to this request, and Zimmerman and Yeo's motion to strike followed. Even on appeal, plaintiffs fail to explain which, if any, expert witnesses they had retained for trial. Nevertheless, the responses received by Zimmerman and Yeo's counsel from the identified experts—that they had not been retained—provides a clear factual basis for the probate court's finding that plaintiffs had not retained the witnesses.

Plaintiffs also assert that their initial discovery responses in June 2017 were sufficient to identify their expert witnesses' subject matter of testimony and opinions. The probate court determined that these responses were unspecific and did not identify the expert witnesses' topics or subject matter. This conclusion was not erroneous, as the original descriptions of the experts' background and subject matter were very generalized. They did not "state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." MCR 2.302(B)(4)(a)(*i*). Nearly three years had also passed since the initial response to defendants' interrogatories, and it was appropriate to supplement the interrogatories to provide a clearer explanation of the experts' proposed testimony with a pending trial approaching.

Plaintiffs' discovery violations relating to the production of e-mails and the retention of expert witnesses were sufficient on their own to justify the probate court's order of dismissal. Yet the probate court also found that plaintiffs' counsel failed to follow rules of professional conduct on candor, an issue that plaintiffs fail to address on appeal.

Rule 3.3(a) of the Michigan Rules of Professional Conduct (MRPC) provides:

A lawyer shall not knowingly:

> (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

> (2) fail to disclose to a tribunal controlling legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

> (3) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

The probate court determined that plaintiffs' counsel misrepresented to the court that he had turned the e-mails over to defendants *before* they filed their motion to strike. Zimmerman and Yeo moved to strike plaintiffs' claims in a motion dated and with proof of service on April 28,

2020, and filed on May 1, 2020. Plaintiffs' counsel sent an e-mail on May 1, 2020, providing a link to Zimmerman and Yeo's counsel to plaintiffs' e-mails. Because the e-mails were disclosed on the same day that the motion to strike was filed with the court, it was not clearly erroneous for the probate court to find that plaintiffs' counsel falsely stated that he had provided the e-mails before the motion was filed.

The probate court also found that plaintiffs' counsel failed to correct his clients' false statements during 2017 depositions that they did not use e-mail when counsel knew otherwise. Plaintiff Marcia Bennett-Veigel testified that she received e-mails from her sisters, but did not send e-mails herself. Plaintiff Linda Dice testified that she did not provide any e-mails or other documents to her attorney as part of the discovery requests. Finally, plaintiff Carol Harrington directly refuted Bennett-Veigel's testimony, with Harrington affirming that she and her sisters had communicated over e-mail for several years. Harrington also testified that she provided e-mails to her attorney. Despite Harrington's testimony and repeated requests for plaintiffs to disclose electronically stored information, plaintiffs did not provide the e-mails until May 1, 2021. The probate court found that plaintiffs' counsel knew that plaintiffs used e-mail to communicate with him and with one another, and therefore failed in his duty under MRPC 3.3(a) to correct Bennett-Veigel's false statement. The probate court's findings that plaintiffs' counsel breached rules of professional conduct on candor was supported by the record evidence. Accordingly, these findings bolster our decision to affirm the court's order dismissing plaintiffs' case as a sanction for discovery violations.

Lastly, plaintiffs contend that, assuming they did commit discovery violations, a less severe discovery sanction than dismissal was appropriate. Before imposing the severe sanction of dismissal, the trial court should consider the following nonexhaustive factors:

> (1) whether the violation was wilful [sic] or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Vicencio v Ramirez*, 211 Mich App 501, 507; 536 NW2d 280 (1995), citing *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990).]

The trial court must explain its reasons for dismissal on the record "in order to allow for meaningful appellate review." *Kalamazoo Oil Co*, 242 Mich App at 88.

The probate court ruled that the ongoing discovery violations were clearly willful and intentional. To be willful, "the failure need not be accompanied by wrongful intent," but need only be "conscious or intentional, not accidental." *Welch v J Walter Thompson USA, Inc*, 187 Mich App 49, 52; 466 NW2d 319 (1991). Defendants repeatedly requested e-mails without response or action by plaintiffs, and plaintiffs failed to provide necessary information on their retained experts throughout the litigation. Plaintiffs' ongoing three-year pattern of conduct, which the probate court found was "meant to thwart discovery," sufficiently established that plaintiffs' violations were willful and intentional. The court also recognized that dismissal as a discovery sanction should only be used "in the rarest of circumstances," but concluded that dismissal was "the only suitable and just remedy" in this matter. The court's opinion touched on all of the

pertinent factors except for any attempts to cure the defect, which was implicitly addressed in the court's statement about the ongoing nature of the discovery violations. In light of plaintiffs' repeated and egregious discovery violations, the probate court's decision to dismiss the case did not fall outside the range of reasonable outcomes.

The probate court's order dismissing all of plaintiffs' claims as a discovery sanction fully resolves this case as to all parties.[6] Accordingly, we need not address plaintiffs' remaining arguments because they are unnecessary to the resolution of this case. See *Smith v Calvary Christian Church*, 462 Mich 679, 689; 614 NW2d 590 (2000).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Kristina Robinson Garrett

---

[6] Although Trustee Zimmerman did not join in the motion to strike plaintiffs' complaint, we conclude that the probate court's order of dismissal as a discovery sanction also dismisses the case against Trustee Zimmerman. The probate court's order failed to differentiate between Zimmerman in his individual capacity and as a trustee, and concluded that the dismissal "closes the case." As plaintiffs reveal in their brief on appeal, they understood the probate court's order of dismissal as applying "to all Defendants." Further, plaintiffs' allegations against each defendant overlapped substantially, such that the discovery violations affected defendants collectively. In other words, plaintiffs' failure to comply with discovery orders did not uniquely prejudice Zimmerman and Yeo, but prejudiced all defendants' ability to obtain necessary information and prepare to defend against plaintiffs' claims at trial. Finally, plaintiffs did not argue in the lower court that, should the court order dismissal as a discovery sanction, the case against Trustee Zimmerman would remain open. Therefore, plaintiffs did not preserve this issue for our review. See *Walters*, 481 Mich at 387 (stating that "generally a failure to timely raise an issue waives review of that issue on appeal") (quotation marks and citation omitted).